FILED

2013 Feb-12  PM 03:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **GAY L. TODD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:12-cv-1168-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Gay L. Todd ("Todd") brings this action pursuant to section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

## I.  Procedural History

Todd filed her application for Title II disability insurance benefits on June

4, 2009, alleging a disability onset date of May 13, 2009, due to nervousness, seizures, and depression. (R. 114, 134, 150). After the SSA denied her application, Todd requested a hearing. (R. 77). At the hearing on October 19, 2010, Todd was 48 years old with a high school equivalent education. (R. 25-66, 138). Todd's past relevant work includes working as an insurance claims adjuster, bookkeeper, and cleaner/housekeeper. (R. 37-38, 135). Todd has not engaged in substantial gainful activity since her alleged onset date. (R. 134).

The ALJ denied Todd's claims, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-6, 9-23). Todd then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability and seeks to establish disability through her own testimony of pain or other subjective symptoms, she must meet additional criteria. Here, Todd seeks to establish her disability through her testimony of subjective symptoms other than pain. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain or other subjective symptoms and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Todd met the insured status requirements of the Act through December 31, 2010.  (R. 14).  Moving to the first step, the ALJ found that Todd had not engaged in

substantial gainful activity since May 13, 2009, and, therefore, met Step One.  *Id*.

Next, the ALJ found that Todd satisfied Step Two because she suffered from the

severe impairments of "depression and seizure disorder" and the non-severe

impairments of "obesity and back pain."  *Id*.  The ALJ then proceeded to the next

step and found that Todd failed to satisfy Step Three because she "does not have

an impairment or combination of impairments that meets or medically equals one

of the listed impairments[.]"  (R. 15).  Although the ALJ answered Step Three in

the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ

proceeded to Step Four where he determined that Todd "has the residual

functional capacity [RFC] to perform light work...except the RFC is consistent

with abilities and limitations contained in Exhibits 9F [Physical RFC Assessment]

and 10F [Mental RFC Assessment]."  (R. 17).  In light of Todd's RFC, the ALJ

determined that Todd is "capable of performing past relevant work as a

cleaner/housekeeper."  (R. 20).  Consequently, the ALJ found that Todd "has not

been under a disability, as defined in the Social Security Act, from May 13, 2009,

through the date of this decision."  *Id*.

## V.  Analysis

The court turns now to Todd's contentions that the ALJ failed to (1)

properly determine Todd's RFC, (2) provide a proper hypothetical to the

vocational expert, (3) adequately develop the record by re-contacting Todd's treating physicians, (4) credit Todd's subjective testimony with respect to her seizure disorder, depression, and associated limitations, and (5) consider new evidence Todd submitted to the Appeals Council. *See* doc. 10 at 8. The court addresses each contention in turn.

### A.     Alleged failure to determine Todd's RFC by applying greater weight to the consultative opinion over the reviewing opinions

Todd's first contention of error is that "the ALJ should not have given greater weight to the opinions of non-examining experts over those of Dr. Blanton," a consultative examining physician. *See* doc. 10 at 10. Specifically, Todd takes issue with the ALJ's decision to give "great weight" to the reviewing opinions in the Physical and Mental RFCs by Drs. Dale Leonard, Ph.D. and Robert H. Heilpern, M.D., and to only give the examining opinion of Dr. Donald W. Blanton, Ph.D., "some weight." To support her contention, Todd cites *Swindle v. Sullivan*, 914 F.2d 222, 226 n. 3 (11th Cir. 1990), for the proposition that "[t]he opinion of a non-examining, reviewing physician is 'entitled to little weight, and taken alone does not constitute substantial evidence to support an administrative decision.'" Doc. 10 at 11.

The Regulations require that the ALJ consider all opinions in the record.

*See* 20 C.F.R. § 404.1527(b).  In the "opinion" hierarchy, opinions from treating physicians are entitled to controlling weight, absent good cause,[2] and, generally, the ALJ is to "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1) and (2).  Moreover, as Todd correctly noted, "[t]he opinions of non-examining, non-reviewing physicians, are entitled to little weight when contrary to those of an examining physician, and, taken alone, they do not constitute substantial evidence."  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012) (citing *Spencer ex rel. Spencer v. Heckler,* 765 F.2d 1090, 1094 (11th Cir. 1985)).  However, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Id.* (citing *Sryock v. Heckler,* 764 F.2d 834, 835 (11th Cir. 1985)).  Additionally, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so."  *Id.* at 902 (citing *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987)).

---

[2]"It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'"  *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "Good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  The "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis*, 125 F.3d at 1440.

Based on this court's review of the record, the court disagrees with Todd's contention that the ALJ failed to clearly articulate why he gave "great weight" to the reviewing opinions and more weight to those opinions over that of the examining psychologist.  According to the record, Dr. Blanton examined Todd on August 6, 2009 and diagnosed her with major depression worsened by seizures. (R. 217-19).  He also determined that Todd had a Global Assessment of Functioning (GAF) score of 50, which as the ALJ noted, represents a serious impairment.  (R. 18, 219).  Dr. Blanton described Todd as "a sad, depressed looking woman who was obviously quite dependent on her husband," that "[h]er mood was depressed and she cries often," and that "[s]he appeared to have a slight psychomotor retardation today."  (R. 218).  Dr. Blanton noted that Todd's "thoughts and conversation were logical," "[s]he was alert and oriented to time, place, person, and situation," and "[h]er intelligence was estimated near average based upon her fund of knowledge and vocabulary, but her cognitive testing was below average here today.  Her memory was erratic.  She was able to recall her trip to the examination and her home address, but gave the wrong last meal and date of birth."  *Id*.  Overall, regarding Todd's mental status, Dr. Blanton opined that Todd's "insight was limited and judgment was considered poor for work and probably fair for financial type decisions," and that Todd "appears to have

developed a significant depression problem since the onset of chronic health issues with her husband.  Her seizure disorder may have also influenced her depression."  (R. 218-19).

Based on Dr. Blanton's failure to "give any prognosis or opinion regarding the future of the claimant's mental state," (R. 18), the ALJ only gave his opinion "some weight."  Todd contends that the ALJ erred in doing so and asks this court to reverse.  The court declines to do so because based on the record before this court, the ALJ is correct about Dr. Blanton's failure to offer an opinion regarding Todd's ongoing or future mental state.  Moreover, it is clear that the ALJ analyzed Dr. Blanton's findings in context with the other medical evidence and considered it in reaching his findings.  Consequently, the court finds no error in the ALJ's decision to only give Dr. Blanton's opinion "some weight."

Todd challenges next the ALJ's decision to give "great weight" to the Psychiatric Review Technique and Mental RFC conducted by state agency psychologist Dale Leonard, Ph.D. and the Physical RFC conducted by state agency physician Robert H. Heilpern, M.D.  (R. 18).  According to the ALJ, Dr. Leonard's and Dr. Heilpern's findings were "consistent with the medical record and the findings of the undersigned."  (R. 18).  In light of Todd's contentions that the ALJ erred by assigning more weight to these two opinions than to Dr. Blanton's

opinion, the court turns to the medical record to see if it is in fact "consistent with the medical and the [ALJ's] findings..." as the ALJ claims.  In that regard, the court notes that in the Physical RFC, Dr. Heilpern primarily diagnosed Todd with major motor and partial complex epilepsy, secondarily with restless leg syndrome, and noted Todd's obesity and insomnia.  (R. 269).  In the Mental RFC, Dr. Leonard opined that Todd was moderately limited in her ability to: maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting.  (R. 277-78).  Moreover, Dr. Leonard added that

> [Todd] can understand, remember, and complete simple tasks. Concentration for detailed tasks would be limited at times by emotional factors. [Todd] can maintain attention sufficiently to complete simple, 1- to 2-step tasks for periods of at least 2 hours, without the need for special supervision or extra work breaks...[Todd] appears able to complete an 8-hour workday, provided all customary breaks from work are provided. [Todd] would function best with a

flexible daily schedule in a well-spaced work setting. [Todd] can tolerate casual, non-intense interaction with members of the general public and coworkers.  Supervision and criticism should be supportive and non-confrontational...

(R. 279).

Given that the Mental and Physical RFCs are partially contrary to Dr. Blanton's examining report and do not include Dr. Blanton's diagnosis of major depression worsened by seizures, the ALJ can only give greater weight to these two RFCs if the rest of the medical evidence is consistent with the RFCs.  *See Forrester*, 455 F. App'x at 901.  Moreover, while the responsibility for assessing the RFC falls on the ALJ, the ALJ must consider "all the relevant evidence in [the claimant's] case record."  20 C.F.R. §§ 416.945(a)(1); 416.946(c).  Based on this court's review of the ALJ's opinion and the medical record, the court finds that the ALJ's decision to assign more weight to the RFC opinions of Drs. Leonard and Heilpern is supported by substantial evidence.

According to the record, neurologist Nasrollah Eslami, M.D. treated Todd for her seizures since their onset in April 2009.[3]  (R. 212-14).  Dr. Eslami opined that Todd suffers from tonic-clonic seizures and issued Todd driving restrictions.

_____

[3]While the ALJ did not specifically mention Dr. Eslami, the ALJ noted that "claimant has a limited history of treatment for seizures," "[t]he etiology of the seizures are unclear according to her treating physician," and that "[t]here are very little records regarding ongoing treatment for seizures."  (R. 18).

(R. 212).  Dr. Eslami schedule an MRI and EEG of Todd's brain and determined

from the MRI that Todd had no abnormalities or brain tumors, but that the EEG

showed "infrequent seizure discharges arising primarily from left temporal parietal

lobe."  *Id*.  Moreover, Dr. Eslami opined that "[b]ased on history and EEG the

patient appears to have major motor and partial complex epilepsy.  Patient is also

quite depressed and suffers from anxiety disorder.. .The etiology of seizures is not

clear."  *Id*.  Unfortunately for Todd, there is nothing in Dr. Eslami's opinion that

contradicts the ALJ's finding.  In fact, the ALJ's opinion mirrored Dr. Eslami's

findings.[4]

Todd's family physician, Dr. Charles Funderburk, M.D., treated Todd in

2008 and 2009 for insomnia and other non-psychiatric issues.  (R. 283-294).  Dr.

Funderburk diagnosed Todd with depression, insomnia, and anxiety, prescribed a

sleep aid medicine for the insomnia, and referred her for a sleep study.  (R. 286-

87).  Like Dr. Eslami's records, nothing in Dr. Funderburk's treatment notes

---

[4]The Government argues that "the record contained no opinion from a treating or examining source.  Thus, the only opinion left for the ALJ to consider were the opinions from the reviewing physician."  Doc. 11 at 9.  However, the Regulations make clear that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  Consequently, a physician's treatment notes discussing a claimant's diagnosis, future prognosis, and treatment are included as medical opinions to which the ALJ must review and provide some articulated weight.  *See* Lewis, 125 F.3d at 1440.

contradicts the ALJ's finding.

Todd also visited Dr. Kamal Raisani, M.D. on July 31, 2009, at the Northport Medical Center Hospital for depression and suicidal ideations upon the recommendation of Dr. Eslami.  Dr. Raisani admitted Todd to the psychiatric unit and treated Todd for five days.  (R. 223-40).  Dr. Raisani noted that Todd's prognosis was guarded but found that "[s]he has done well [and that] she did not really show any major problems."  (R. 223).  However, when Dr. Raisani discussed discharging Todd, Todd became tearful and angry.  *Id*.  Todd ultimately agreed to go home, and Dr. Raisani discharged her the next day, scheduling a follow-up appointment in the outpatient clinic.  *Id*.

Todd visited Dr. Raisani's clinic on August 7, 2009, during which Dr. Raisani noted that Todd "has history of significant anxiety and is dealing with stress of her husband having ALS" and that Todd had "good mood and affect....has not expressed any though[t]s of harm to [self] or others.  Sleep, appetite, and activity are in good range so is the leisure activity.  The patient has no perceptual anom[a]lies and insight and judgment is [con]sidered good."  (R. 281).  Dr. Raisani diagnosed Todd with Generalized Anxiety Disorder and depression and instructed Todd to continue her management and to follow-up with Indian Rivers Mental Health Center.  *Id*.

Todd sought treatment for her depression and anxiety at the Indian Rivers
Mental Health Center ("IRMHC") beginning in August 2009 where therapist
Michelle Littleton diagnosed Todd with seizure disorder and major depressive
disorder.  (R. 246-254, 307-315, 327, 329).  Littleton added in September 2010,
that Todd "continues to report depressive symptoms and minimal relief [with]
medication," and that Todd "exhibits serious to moderate functional impairments."
(R. 307-08).[5]

Although the ALJ failed to mention Drs. Funderburk and Raisani and
therapist Littleton specifically in his opinion, like Dr. Eslami, the ALJ's opinion
relies on their findings in reaching a determination.  For example, as it relates to
Todd's depression,  the ALJ noted

> The claimant has a limited history of treatment for depression.  The
> claimant was hospitalized for her depression from July 31, 2009 to
> August 5, 2009....She is currently on medication for the depression
> and is in therapy at Indian Rivers Mental Health Center.  It was noted
> at her June 16, 2010 visit that she was benefitting from the therapy,
> although the claimant stated that she was receiving minimal relief

---

[5]While therapists such as Littleton are not "acceptable medical sources" as defined in 20
C.F.R. § 416.913(a), and, thus, not entitled to the automatic substantial or considerable weight
given to treating physicians, *see* SSR 06-03p, therapists are recognized as "other sources" whose
testimony may be used to provide insight into the severity of a claimant's impairment or how it
affects the ability to function.  *See* SSR 06-03p; 20 C.F.R. §§ 416.913(d) and 404.1513(d).
Consequently, the ALJ is required to consider all the relevant evidence in the record including
the opinions issued by "other sources" such as therapists.  *See* SSR 06-03P; 20 C.F.R. §§
404.1545(a)(1), (b); 20 C.F.R. §§ 416.945(a)(1), (b).  It is clear from the ALJ's opinion that he
considered the records from Indian Rivers in his opinion.

from the medication; however, no changes were made to her medication.  It appears from the records that she does not attend therapy regularly although she reports and has been diagnosed with severe depression.

(R. 18).  These are of course findings that the ALJ could only reach if he reviewed the records in question.  Significantly, the ALJ's opinion incorporates the findings of these medical sources.  Unfortunately for Todd, while these treating sources outline Todd's history of depression and seizures, their respective opinions are consistent with the Physical and Mental RFCs by Drs. Leonard and Heilpern that the ALJ gave "great weight."  Given that the ALJ considered the records of the treating professionals in his evaluation of the consultative psychologist Dr. Blanton and that of the non-examining experts, the court has no basis to find that the ALJ should have given more weight to Dr. Blanton's opinion than that of Drs. Leonard and Heilpern.  Significantly, there is nothing in the opinions of the treating sources or Dr. Blanton's that contradict the ALJ's findings.  Accordingly, the substantial evidence supports the ALJ's RFC findings.

## B.     Alleged failure to provide an appropriate hypothetical to the vocational expert to include all of Todd's impairments

Todd's second contention of error is that the ALJ's hypothetical to the vocational expert failed to take into account all of Todd's impairments of depression, chronic insomnia, memory loss, or mental confusion.  *See* doc. 10 at

14.  Generally, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  If the ALJ fails to do so, the vocational expert's testimony is not substantial evidence and cannot support the ALJ's conclusion that the claimant can perform significant numbers of jobs in the economy.  *Winschel v. Comm. of Social Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011).

However, here, the ALJ arguably implicitly accounted for all of Todd's severe impairments, including depression, in the hypothetical to the vocational expert.  *See id*.  For instance, the Mental RFC referred to in the hypothetical states that Todd's "[c]oncentration for detailed tasks would be limited at times by emotional factors," that Todd "can tolerate casual, non-intense interaction with members of the general public and coworkers," and that Todd is moderately limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (R. 279).  This reference to the Mental RFC belies Todd's contention that the hypothetical failed to account for her depression.

As it relates to the insomnia that Todd claims the ALJ failed to include in

the hypothetical, the court notes that Todd never alleged a disability based on insomnia. *See* (R. 134, 150). Moreover, the ALJ arguably accounted for Todd's insomnia because the Physical RFC specifically included insomnia under "other alleged impairments," and Dr. Heilpern noted that Todd "reports having seizure activity beginning this year with the MD believing they are related to lack of sleep and her body shutting down." (R. 270).

Finally, as it relates to the memory loss or mental confusion that Todd also cites as grounds for error, the court notes that the responsibility for assessing the RFC falls on the ALJ, and that, in doing so, the ALJ considers "all the relevant evidence in [the claimant's] case record." 20 C.F.R. §§ 416.945(a)(1); 416.946(c). Consistent with this charge, the ALJ reviewed the Todd's medical records, as discussed *supra*. Specifically, the ALJ relied upon the Mental RFC which stated that Todd was "not significantly limited" in her ability "to remember locations and work-like procedures[,]" "to understand and remember very short and simply instructions[,]" and "to understand and remember detailed instructions[.]" *See* (R. 277). Accordingly, the ALJ did not find that Todd's alleged memory loss or mental confusion constituted a "severe" impairment, and, as such, did not include either in the hypothetical to the vocational expert. *See* (R. 14). The medical record supports the ALJ's decision.

Ultimately, Todd has the burden of proving that she is disabled.  *See* 20 C.F.R. § 416.912(c).  Because Todd has failed to prove that the ALJ failed to include all of Todd's actual impairments in the hypothetical to the vocational expert, the substantial evidence supports the ALJ's reliance on the vocational expert's testimony.

### C.   Alleged failure to develop the record by not re-contacting the treating physicians

Todd asserts next that the ALJ failed to adequately develop the record by re-contacting Todd's treating physicians and that the ALJ had an obligation to do so because of his findings that Todd had a "limited history of treatment for seizures" and a "limited history of treatment for depression," *see* doc. 10 at 15 (citing (R. 18)), and characterized the medical evidence as "relatively weak."  (R. 19).  While an ALJ "has a basic duty to develop a full and fair record," *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), "medical sources generally need only be re-contacted when the evidence received from that source is inadequate to determine whether the claimant is disabled."  *Gallina v. Comm'r of Soc. Sec.*, 202 F. App'x 387, 388-89 (11th Cir. 2006) (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e); *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997)).  Moreover, courts "generally will not question the ALJ's development of the record unless it 'reveals evidentiary gaps which result in unfairness and clear prejudice.'"  *Id.* (citing *Brown*

*v. Shalala,* 44 F.3d 931, 935 (11th Cir. 1995)).

Todd equates the ALJ's use of "limited history" as being synonymous with an incomplete record. However, as the court's review in Sections A and B of this opinion make clear, the medical record is not incomplete. Rather, it shows only that Todd obtained treatment for the conditions Todd claims are disabling during a short period of time. Put differently, "limited history" as used by the ALJ simply denoted a lack of an extensive period of treatment for the alleged disabling conditions. Because the court finds that the record was sufficiently complete for the ALJ to reach a determination on Todd's disability claim, the court finds no error with the ALJ's failure to re-contact Todd's treating physicians. Moreover, again, Todd has the burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). To the extent that there are missing records which support her claim, Todd should have provided them to the ALJ.

### D.   <u>Alleged failure to credit the subjective testimony of Todd</u>

Todd contends next that the ALJ failed to credit her testimony regarding her subjective symptoms or to provide a reasonable basis for rejecting her testimony. Doc. 10 at 19. Todd testified that she cannot work due to her depression and seizures, that she has seizures two to three times a week, which cause her memory to become erratic and make her disoriented, and that her employer terminated her

because of her excessive absences and for being unable to keep up with the work. (R. 34-55).

Complaints of subjective symptoms alone are insufficient to prove disability. *See* 20 C.F.R. § 416.929(a); *see also Holt*, 921 F.2d at 1223. Rather, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Id*. This standard also applies to complaints of subjective conditions other than pain. *Id*. As the ALJ found at Step Two, Todd has underlying medical conditions of depression and seizure disorder. (R. 14). Therefore, Todd satisfies the first prong of the pain standard. As to the second prong, Todd contends there is objective evidence in the record confirming the severity of her alleged symptoms, including her EEG, her GAF score, Dr. Blanton's physical examination, and Dr. Eslami's records. *See* doc. 10. Because Todd's testimony concerning her medical condition finds some support in the medical record, Todd asserts that her testimony alone is sufficient to support a finding of disability, *see Holt*, 921 F.2d at 1223, and that the ALJ's failure to properly discredit Todd's testimony and articulate reasons for doing so is reversible error, *see Hale*, 831

F.2d at 1012.

Although the ALJ did not explicitly outline his determination regarding whether Todd met any prongs of the three-part pain standard, he stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 17-18). The ALJ proffered several reasons for his finding: (1) Todd's limited treatment for her seizures and depression, (2) Todd's inconsistent statements, and (3) the absence of any opinion stating that Todd was disabled. (R. 18). While the ALJ failed to adequately articulate his review and weight given to Todd's treatment opinions and evidence in the record, based on the court's review of the medical record, there is arguable evidence to support the ALJ's conclusion. Since this court is not tasked with reevaluating the evidence or to substitute its judgment, the court cannot say that the ALJ erred, especially since the Physical and Mental RFCs support the ALJ's decision. Moreover, the record supports the ALJ's findings regarding the inconsistent statements. Specifically, the ALJ stated that Todd testified that she had not attended church in years, has very little social

CR

contacts, and spends the days in her pajamas in her room.  *Id*.  However, as the

ALJ noted, Todd told Dr. Blanton that she attends church regularly, has lots of

friends, and enjoys sitting outside by her fish pond.  *Id*.  These inconsistent

statements are sufficient to support the ALJ's findings that Todd's testimony was

wholly non-credible.  Finally, there is nothing in the record to refute the ALJ's

finding that no physician opined that Todd's conditions precluded her from

engaging in any gainful employment.  In short, the substantial evidence supports

the ALJ's decision to discredit Todd's testimony.  *See Hale*, 831 F.2d at 1012.

### E.   New evidence Todd submitted to the Appeals Council

Finally, Todd contends that the Appeals Council should have considered the

new evidence she submitted, which included additional medical records from Dr.

Eslami and letters from the counselor at the IRMHC.  *See* doc. 10 at 25.

Generally, the Appeals Council "will review [a claimant's] case...[if the Council]

receive[s] new *material* evidence *and* the decision is contrary to the weight of all

the evidence now in the record."  (R. 1) (emphasis added); *see Ingram v. Comm'r

of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("When no new

evidence is presented to the Appeals Council and it denies review, then the

administrative law judge's decision is necessarily reviewed as the final decision of

the Commissioner, but when a claimant properly presents new evidence to the

Appeals Council, a reviewing court must consider whether that new evidence

renders the denial of benefits erroneous.").  Here, however, the Appeals Council did not need to remand the case to the ALJ because it reviewed the new evidence in making the decision to affirm the ALJ, R. 1, and the new evidence was not "material" or "probative" and provided nothing significantly different from the evidence previously provided in the record.

For example, the new evidence included several treatment notes from Todd's visits to Dr. Eslami, which failed to provide significant additional evidence to support Todd's case beyond the fact that Todd continued to seek treatment.  *See* (R. 320-26).  Although Todd had a seizure while in Dr. Eslami's office in April 2010, Dr. Eslami noted that "[Todd] was lying on the floor and stated she is about to have a seizure. My staff noted she was twitching and jerking in the upper extremities while lying on the floor but during the spell she was talking.  There was no loss of consciousness and no true seizure activity noted."  (R. 321).  Dr. Eslami then concluded that "I think most of her spells are probably stress-related and not epileptic.  On further questioning, [Todd] admitted she has been under a lot of stress."  *Id*.  Rather than supporting Todd's claim, this new evidence arguably contradicts Todd's assertion of disability and suggests that she may have faked the seizure.  Moreover, during a visit in December 2009, Dr. Eslami noted that the "patient states that she has had one seizure...[and] the patient states that it has been a month since her last seizure and Lamictal has been helping."  (R. 323).

This evidence contradicts Todd's testimony that she has seizures 2-3 times a week.

The only other additional evidence includes two one-page letters from Todd's therapist Michelle Littleton at IRMHC.  *See* (R. 327, 329).  The November 2010 letter states that Todd continues to receive care from their facility, Todd's same diagnoses, and that "Ms. Todd has been compliant with all treatment goals and is an active participant in her treatment."  (R. 327).  The May 2011 letter also states that Todd is receiving care at IRMHC, her same diagnoses, her medications, and that "Mrs. Todd is under the psychiatric care of Dr. Kazi W. Ahmad."  (R. 329).  The court fails to see how this evidence is probative or "contrary to the weight of the evidence currently of record."  *See Fry*, 209 F. Supp. 2d at 1254.  Consequently, the court finds no error with the Appeals Council decision to deny review of the ALJ's decision, especially since the Council considered the new evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Todd is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 12th day of February, 2013.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE